Coleman, &c., vs. Frazer, &c.

---

---

CASE 81—PETITION EQUITY—MAY 22.

# Coleman, &c., vs. Frazer, &c.

APPEAL FROM KENTON CIRCUIT COURT.

1.  Notes, mortgages, and deeds, procured to be executed without any adequate consideration, by a man near eighty years old, much enfeebled in body and mind, and rendered by his circumstances, and mental and physical condition, incapable of protecting himself from fraud and imposition, are held to be invalid and set aside.

2.  For money advanced for necessaries, and to pay off an incumbrance on his real estate, for a person mentally incompetent to contract, the party making the advancements is entitled to a charge against his estate, and to be subrogated to the benefit of the incumbrance which he discharged.

3.  The estates of lunatics, like infants and married women, are chargeable, as for necessaries, for whatever may be furnished them, which is reasonably necessary and beneficial to them. (*Pearl vs. McDonald*, 3 *J. J. M.*, 662; 1 *Parsons on Contracts*, 312.)

HOADLY, JACKSON & JOHNSON, and
J. O'HARA,                                                    For Appellants,

CITED—

4 *Dana*, 348; *Hunt vs. Weir*.

2 *B. Mon.*, 74; *Watson vs. Watson's heirs*.

2 *B. Mon.*, 79 ; *Reed's Will.*

4 *Met.*, 163 ; *Sechrist vs. Edwards.*

2 *J. J. Marshall*, 240 ; *Elliott's Will.*

2 *J. J. M.*, 331 ; *McDaniel's Will.*

1 *B. Mon.*, 353 ; *Harrison's Will.*

*Story's Eq. Jurisprudence, sec. 64e.*

5 *Modern*, 368 ; *Ellis vs. Ellis.*

10 *Ib.*, 67 ; 1 *Salk.*, 387.

5 *Esp.*, 28 ; *Clarke vs. Leslie.*

1 *Denio*, 460 ; *Randall vs. Sweet.*

10 *Cush.*, 436 ; *Swift vs. Bennett.*

7 *N. H.*, 368 ; *Conn vs. Coburn.*

2 *Hill (S. C.)*, 400 ; *Haine vs. Tarrant.*

1 *P. Wms.*, 558.

2 *Pothier on Ob.* (1 *Am. ed.*), 26.

*Dixon on Subrogation*, 25, 165.

3 *Vermont*, 212 ; *Paine vs. Hathway.*

12 *Jurist.*, 800 ; *Molton vs. Camroux.*

5 *B. & C.*, 570 ; *Baxter vs. Earl of Portsmouth.*

1 *Rawle*, 231 ; *Lancaster vs. Dolan.*

3 *P. Wms.*, 9 ; *Miles vs. Banks.*


CARLISLE & O'HARA,                          On same side,

CITED—

1 *Littell*, 252 ; *Watts vs. Bullock.*

5 *Mon.*, 202–3 ; 2 *J. J. M.*, 342 ; *Elliott's Will.*

2 *J. J. M.*, 331; *McDaniel's Will.*

2 *Dana*, 445 ; *Cates, &c., vs. Woodson.*

1 *B. Mon.*, 291; *Wall vs. Hill's heirs.*

1 *B. Mon.*, 246 ; *Prather vs. Naylor's adm'r.*

8 *Dana*, 316; *Singleton's Will.*

4 *Bibb*, 244 ; *Harper's Will.*

5 *B. Mon.*, 104 ; *Sherley vs. Taylor, &c.*

5 *B. Mon.*, 225 ; *Jones' adm'r vs. Perkins.*

6 *B. Mon.*, 297; *Haynon vs. Boyd.*

13 *B. Mon.*, 270; *Hays' heirs vs. Grimes.*

2 *B. Mon.*, 74; *Watson vs. Watson.*

4 *Met.*, 169; *Sechrist vs. Edwards.*

1 *Duvall*, 223; *Maupin vs. Woods.*

STEVENSON & MYERS,      For Committee of Wm. Frazer,
            CITED—

*Civil Code*, sec. 153, *and notes.*

2 *Met.*, 380; *Corbin vs. Commonwealth.*

18 *B. Mon.*, 72; *Morton vs. Waring.*

2 *Duvall*, 173; *Fritz vs. Tudor.*

9 *Barbour* (*N. Y.*), 219; *Conner vs. Conner.*

2 *Met.*, 520; *Toombs vs. Stone.*

2 *Met.*, 503; *Johnston vs. Ferguson.*

3 *Met.*, 503; *Gaines vs. Poor.*

*Rev. Stat.*, chap. 47, sec. 17, 2 *Stant.*, 28.

17 *B. Mon.*, 57–59; *Stuart vs. Wilder.*

J. F. & C. H. FISK,    For Mrs. Mary and Leslie Frazer,
            CITED—

2 *Met.*, 503; *Johnston vs. Ferguson.*

2 *Met.*, 520; *Toombs, &c., vs. Stone, &c.*

3 *Met.*, 503; *Gaines vs. Poor.*

*Rev. Stat.*, chap. 47, sec. 17, 2 *Stant.*, 28.

*Act of Feb.* 16, 1858, 2 *Stant.*, 32. .

17 *B. Mon.*, 55; *Stuart, &c., vs. Wilder.*

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT:

On the second day of October, 1860, Elizabeth Phile, as the assignee of Cambron & Fisk and Menzies & Pryor, filed her petition against William Frazer, B. F. Sandford, and Peter Reed, on their promissory note for three hundred dollars. Subsequently, the plaintiff, by an amended petition, exhibited another note of three hundred dollars,

given by said defendants to said Cambron & Fisk and Menzies & Pryor, and assigned by them to the plaintiff, and sought the foreclosure of a mortgage made by William Frazer in September, 1858, of a tract of land to secure debts, including said notes. These notes appear to have been assigned by said Elizabeth Phile to S. T. J. Coleman, and by him to Mooar & O'Hara during the pendency of the suit.

On the 18th day of January, 1862, John McCoy brought a suit in equity against William Frazer and his wife, Mary Frazer, and said Coleman, and others, asserting a claim of six hundred dollars against Frazer and wife, secured by a mortgage on the aforesaid tract of land, and suggesting said mortgage claims of Coleman, and certain other interests in the land claimed to be held by Coleman and Thomas Williams, under mortgages and conveyances of the land. The validity of these mortgages and conveyances, and the transactions out of which they grew, form the principal matter of litigation in these causes.

By the answers of Coleman and Williams to the petition of McCoy and other pleadings, it appears that about the 5th of December, 1859, said William Frazer, who was an old and very infirm man, being in embarrassed circumstances, and in need of money to relieve his land of a claim then being asserted by one Jonathan Hill, united with his wife in a mortgage of said land to secure a note for five thousand dollars, made payable to their son, Leslie Frazer, who at the time indorsed it to Coleman as a means of raising money for William Frazer. That afterwards, on the 14th of December, 1859, said William Frazer and wife, for the expressed consideration of one dollar, " and in order to make a more suitable provision " for said Mary Frazer, conveyed, or attempted to convey,

said tract of land to said Leslie Frazer in trust, for the following purposes, as stated in the deed: "To permit the said Mary Frazer, her heirs or legal representatives, to receive the rent, issues and profits of said real estate during the continuance of this trust, and further to convey the same in fee simple, or any lesser estate therein, to such person as the said Mary Frazer may, at any time, in writing, request, or to convey the same in trust, and subject to the conditions herein expressed, to such person as the said Mary Frazer may, at any time, in writing, request, or to convey the same in trust, and subject to the conditions herein expressed, to such person as the said Mary Frazer may, at any time, in writing, nominate as trustee; and, upon the death of said Mary Frazer, to convey or otherwise apply the said real estate, or the proceeds thereof, to such persons or to such purposes, and in such manner, as the said Mary Frazer may, by her will, appoint or direct, or, in default thereof, to her heirs forever."

It further appears, that afterwards, on or about the 16th of January, 1860, said Leslie Frazer and Mary Frazer executed a mortgage on said land, as security for a note of said Leslie to Edward R. Newhall, for two thousand dollars; and this note was, at the same time, indorsed by Newhall to Coleman; and afterwards, said Leslie and Mary Frazer made another mortgage of the land to secure a note for two thousand five hundred dollars, made nominally to D. K. Cady, but really for Coleman, to whom Cady assigned it, having paid nothing himself, and without receiving anything from Coleman; and, as further security for this note, William Frazer and his wife afterwards executed a mortgage on a tract of land in Indiana to Coleman, which was prepared by Cady as an attorney, at the instance of Coleman. And it also appears, that,

in consideration of an undertaking of said Williams to assume and pay to Coleman said note of five thousand dollars and said note of two thousand dollars given to, and indorsed by, Newhall, said Leslie and Mary Frazer executed to Williams an absolute deed to said tract of land embraced by said mortgages and deed of trust; and, claiming the land under said conveyance, Williams brought an ordinary action for its recovery against William Frazer in February, 1862.

The assignment already referred to of the two notes of three hundred dollars each from Elizabeth Phile to Coleman bears date the 14th day of September, 1861, and Coleman's assignment of the same claims to Mooar & O'Hara is dated the 13th of March, 1862 ; nevertheless, it appears that, on the 10th day of June, 1861, in consideration of some claim to Coleman to said debts, or of some undertaking or promise made by him to pay them, said William Frazer and his wife were induced to execute their note to him for seven hundred dollars, payable thirty days after date, with a mortgage to secure it of all, or nearly all, their personal property, including even such articles as were exempt from sale under the execution laws ; and upon this note and this mortgage (which were given for no consideration, as the original debt was not discharged, but purchased and withheld, and subsequently assigned to Mooar & O'Hara) Coleman brought a suit on the 24th of December, 1861, and, pending the suit, procured an order of sale, under which most of the mortgaged property was sold.

In March, 1862, Wm. Frazer was found and adjudged to be a lunatic, in the Kenton circuit court, and a committee being appointed for him, proper pleadings were filed by the committee controverting the claims of Coleman and Williams; and in June, 1862, said ordinary

action of Williams against Frazer was transferred to the equity docket, and the same and said cases of Phile against Frazer, McCoy against same, and Coleman against the same, were consolidated; and the several causes being subsequently prepared and heard together, a judgment was rendered, by which it was decided, in substance—

1. That the note and mortgage to Coleman for seven hundred dollars were void, and that the action thereon, brought December 24th, 1861, be dismissed.

2. That Coleman's claim, presented by his cross-petition, filed March 12th, 1862, to enforce the note and mortgage for two thousand five hundred dollars made to Cady, and by him indorsed to Coleman, be dismissed.

3. That the suit of Williams to recover the land be dismissed.

4. That said mortgage from William Frazer and wife to Leslie Frazer, dated December 5th, 1859, and said deed of trust to Leslie Frazer, and the conveyance from him and Mary Frazer, together with one from William Frazer to Williams, and said notes of five thousand dollars and two thousand dollars, were void and set aside.

5. That the claim of Williams to be reimbursed the amount paid on said notes and mortgages be rejected and dismissed.

6. That Mooar & O'Hara, as assignees of Coleman, recover their claim as asserted in the original suit of Phile against Frazer; and from this judgment Williams and Coleman prosecute this appeal.

Various questions are raised, most of which seem to be embraced by two inquiries:

1st. Were said transactions and conveyances, through which the appellants acquired their claims, obligatory

on William Frazer, or invalid for want of capacity in him to bind himself thereby, or for undue influence or fraud in their procurement?

2d. If they were invalid, then how, and to what extent, are the appellants affected in their rights in relation to moneys actually advanced and applied for William Frazer's benefit in discharge of prior encumbrances of his property?

In disposing of the first of these inquiries, no elaborate statement of the evidence is deemed necessary. While there is a contrariety of testimony as to Frazer's capacity at the date of said transactions to make ordinary contracts, we are constrained to concur in the judgment of the circuit court in annulling and setting aside said notes and conveyances, from certain well established facts connected with their execution.

At the date of the first of said transactions, William Frazer was near eighty years of age. With the natural effects of senility, a painful and prostrating disease had combined to reduce and enfeeble him in body and mind. His physical condition subjected him, in a great degree, to the influence and control of his family, who, although kind to him, manifested but little capacity, in themselves, to protect him from the frauds or impositions of others. Although the alleged combination of Coleman and Williams is denied, the complicity of each of them in the acts of the other sufficiently appears. Their agency in procuring the execution of notes and mortgages to Leslie Frazer and others, and the readiness of Coleman to discount them, nominally in the hands of Leslie Frazer, Newhall, and Cady; the utter failure of both Coleman and Williams to show, that, for all these encumbrances on the land of William Frazer, he received any adequate consideration; and the fraudulent and unconscientious

conduct of Coleman in obtaining and attempting to enforce the note and chattel mortgage of seven hundred dollars, considered in connection with the other essential facts, incontestibly proved, stamp these transactions as fraudulent and iniquitous on the part of both Coleman and Williams.

The question raised as to the construction of the deed of trust to Leslie Frazer, and the character of the estate thereby vested in Mary Frazer, supposing that deed to be a valid instrument, need not be considered, as, in our opinion, said deed, with the other conveyances, was properly set aside.

It remains to be determined whether or not the court below erred in denying to the appellants, or either of them, any relief whatever.

For the appellants it is insisted, that it sufficiently appears in the record that at least three thousand dollars of the sum Coleman agreed to pay for the note of five thousand dollars, was appropriated to discharge the claim of Hill, by which Frazer's land was encumbered; and that, if the writings were not obligatory on William Frazer, the appellants were, nevertheless, entitled to relief to the extent of the actual payments made by them to relieve his estate from Hill's encumbrance, and, to such extent, to a charge on the estate. While, on the other side, it is contended that the court properly denied to the appellants any judgment to reimburse them on substantially the following grounds:

1. That it is not sufficiently shown that any sum was actually expended by them to remove Hill's encumbrance; 2. That they were not, on the pleadings, entitled to any recovery by subrogation to the rights of Hill, he not being before the court nor his claim put in litigation by the pleadings; and, 3d. That whatever sums of money they

may have furnished to Mary Frazer or Leslie Frazer, and however the same may have been used by them, nothing was so paid or furnished to William Frazer, or his committee, or any one having authority to bind him or his estate by receiving the same.

Respecting the first of those objections, we think it sufficiently appears that a sum of money supposed to be enough to discharge the claim of Hill was placed in the hands of Mr. Kittridge as the attorney of William Frazer, to be used to relieve the land of Hill's claim; and this and other facts, conducing to show that Hill's encumbrance on the land was in some way removed by the use of the money so provided, seem to us, at least to have been sufficient to require the court to send the case to a commissioner to ascertain the essential facts, rather than dismiss the parties for the uncertainty of the evidence. And as to the objection that Hill was not a party, as it was necessary to bring him before the court in order to determine the controversy touching the validity and amount of his claim, the court should have ordered that he be made a party. (*Civil Code*, sec. 40; *Johnson vs. Chandler*, 15 *B. Mon.*, 589.)

We are also of the opinion that the objection taken for the appellees—that however the money furnished by the appellants may have been used, no charge could exist for it on Frazer's estate, because he was mentally incompetent to contract—is untenable. If it is true, as the evidence conduces to prove, that the appellants, or one of them, furnished money which was used by an attorney, acting as such for Frazer, to relieve his estate of an encumbrance, such advancement was not only a sufficient consideration for an implied promise to repay the money advanced, but, by subrogation, at least, entitled the party making the advancement to a charge

on the estate, upon the well-established principle that lunatics, like infants and married women, are chargeable as for necessaries, for whatever may be furnished them which is reasonably necessary and beneficial to them. (*Pearl vs. McDaniel, &c.*, 3 *J. J. Marshall*, 662; 1 *Parsons on Contracts*, 312.)

It seems to us, therefore, that the judgment which denies to the appellants any relief whatever for money paid or furnished, although the same may have been used to provide for Frazer the necessary means of living, or to save his land from being recovered or sold under the claim of Hill, is erroneous.

Wherefore, the judgment is reversed, and the cause remanded, for further proceedings consistent with this opinion.