JOHN O'CONNOR v. WILLIAM G. BECKWITH, ADM'R OF MICHAEL CUSICK.

*Estoppel by acquiescence from disputing findings of fact—Claim against estate for care bestowed on decedent—Delayed administration on estate—interest on claims.*

41 657
69 286

41 657
s3NW 166
129 ³695

41 657
140 ² 82

41 657
152 443

Where an administrator excepted to a referee's finding in favor of a claim against the estate, and afterwards acquiesced in the decision of the circuit judge confirming the finding but overruling the conclusion of law, it was *held* that on error brought by the claimant he could not contest the findings of fact.

A man lived much of his time in his sister's family where his washing and ironing was done and he was taken care of when sick. He never paid anything, but repeatedly said he would pay for all that was done for him, and it did not appear that no return was expected. *Held* that his estate was liable on an implied assumpsit for the services done him.

Findings of fact are in the nature of special verdicts and are conclusive on the appellate court.

Where the brother-in-law of an intestate, believing it to be the wish of all interested, took charge of decedent's property in order to settle his affairs and bought an outstanding note and mortgage against him which he voluntarily discharged, it was *held* that he was entitled on a subsequent administration to charge the estate with the amount.

Where a claimant against an estate had not only neglected to procure administration but had delayed it, interest was not allowed on his claims as damages for delay in payment.

Error to Kent.    Submitted Oct. 8.    Decided Oct. 21.

Appeal to the circuit court from an order disallowing a claim against an estate.    Claimant brings error.

*Taggart, Stone & Earle* for plaintiff in error.    The fact of service raises a presumption that it is to be paid for, *Guild v. Guild,* 15 Pick., 129; *Putnam v. Town,* 34 Vt., 429; *Andrus v. Foster,* 17 Vt., 556; *Candor's Appeal,* 5 W. & S., 513; *Steel v. Steel,* 12 Penn. St., 64; *Torry v. Young's Estate,* 39 Mich.

*Champlin & More* for defendant in error.    A promise

cannot be implied where the circumstances repel the idea that payment was to be made 'or asked for, *St. Jude's Church v. Van Denherg*, 31 Mich., 289.

GRAVES, J.   O'Connor brought a claim against the estate of Cusick and the case was appealed to the circuit court and there sent to a referee.   The referee reported a finding in favor of O'Connor and returned a bill of exceptions taken by the .administrator.   The latter objected to the proceedings and the court confirmed all the findings of fact, but overruled the conclusion of law in favor of O'Connor and gave judgment for the estate. The administrator acquiesced in this determination embracing a confirmation of the finding of facts, but O'Connor brought error.

The record contains the bill of exceptions taken before the referee at the instance of the administrator.   It does not purport to include all the evidence, but only so much as in the referee's judgment tended "to prove the facts stated and found in the report."

We think under these circumstances there is no ground for the administrator to go behind the findings of fact and urge that they are not borne out by the evidence. He has not complained of any part of the adjudication below, and if it be admitted that his bill of exceptions is entitled to any consideration here, it is not full enough to be of any avail to him.   The case depends on the law arising on the facts reported by the referee.

The decedent Cusick was a single man and had never been married.   He died in January, 1864, intestate, leaving four sisters and one brother as his heirs at law. One of the sisters is O'Connor's wife.   For about fourteen years preceding his death, and when not stopping elsewhere, he made his home at O'Connor's, and this was the case whenever he was sick or unable to get work. He acquired a lot of forty acres near O'Connor's and six or eight years before his death put up a rough shanty on it and lived there a part of the time.   During the

last six years of his life he boarded with O'Connor about half of the time, and for the same period Mrs. O'Connor and her daughter generally washed and mended for him and also made more or less of his clothes.   He was somewhat intemperate and his habits and poor health caused much special care and attention.   There was no bargain or express understanding concerning pay and no account was kept and he never paid any thing.   But from time to time during the six years mentioned he repeatedly declared to different members of O'Connor's family that he would pay for all that was done for him. O'Connor provided for him during his last sickness and paid the funeral expenses.

Shortly afterwards the surviving brother and Mrs. Caples, a sister, quit-claimed to O'Connor their interest in the forty-acre lot in order that it might be used to pay the debts.   It was encumbered by a mortgage given in October, 1859, carrying interest at ten per cent., and decedent's note accompanied the mortgage.   In April, 1864, O'Connor bought these securities and took possession of the land, and in 1869 he voluntarily discharged the mortgage of record and gave his son a deed of the south half of the lot.   No steps were taken for a legal settlement of the estate until some time in 1876.   Prior thereto O'Connor had gone on in good faith and believing that all interested desired him to pursue the course taken.

The amount left of personal property was trifling, and this was divided between Mrs. O'Connor and Mrs. Caples, except a few pounds of pork and flour which were given to the Sisters of Charity.

The first question is whether these findings of fact which have been referred to, and which the circuit court confirmed, establish a valid claim against the estate, and we think they do.   We cannot look beyond the finding to speculate upon what might have been found to qualify or change the case.   The finding is in the nature of a special verdict, and is conclusive here; and whatever questions there may be to be settled between

O'Connor and the heirs, there is no room in this case and on this record for any thing more than an adjudication upon his claim against the estate.

We think the demand founded on the note and mortgage is a valid charge beyond controversy. They were the personal obligations of the deceased, and O'Connor purchased them and the estate has never paid them.

The other demands stand on a different footing, but we think all the items found by the referee to be owing to O'Connor, apart from the allowances of interest, must be allowed. Their intrinsic nature gives them a meritorious character, and decedent did not expect the benefits were being rendered gratuitously. He expected to pay, and there is no fact indicating that O'Connor expected no return, and the finding includes an assumpsit in construction of law.

The question of interest on this branch is governed by different considerations. It is a question of damages, and not of positive agreement. The point is whether the detention of the demands ought to be compensated by damages in the name of interest. Now it does not lie with O'Connor to impute laches to the estate or claim damages therefor. He was a creditor and might have taken or procured administration without delay, and he neglected to do so. Moreover he was an active party in causing the estate to stand without being settled and without any one to represent it. He acted on an understanding that there should be no administrator and no legal settlement, and we think he must be deemed to have waived all right to damages for the delay. According to the view taken, O'Connor should be allowed on account of the note and mortgage $565.83, and on account of the other items found by the referee $1150.15.

The determination of the court below against O'Connor must be reversed, and an order must be entered here allowing him the foregoing sums against the estate, and it must be so certified to the courts below.

The other Justices concurred.